## MARY FOWLER, Respondent, *v.* THE METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

*Estoppel — when a life insurance company will be estopped, by statements contained in a pamphlet distributed by it, from availing itself of a breach of a condition of the policy.*

A policy for $10,000, issued by the defendant upon the life of one Fowler, was, pursuant to the provisions therein contained, surrendered to the company and a paid up policy for $1,500 taken out, subject to the payment, annually in advance, of the sum of thirty dollars and eighteen cents, being the interest on premium notes given in payment of premiums falling due under the first policy. Fowler having moved to Wisconsin, remitted to his father, who resided in New York city, the money required to pay the interest becoming due on September 12, 1873. The letter was received by the father in the latter part of that day, at his residence. Presuming that he could lawfully pay the money on the next day, he, on that day, went to the office and tendered the amount, which the company refused to receive upon the ground that by virtue of a condition contained in the policy, the failure to pay the amount on the preceding day had terminated the policy and rendered it void.

To avoid this effect it was proved that the company had prepared and printed for use, and distributed in the course of its business, a pamphlet explaining the advantages offered by it, and the effect which would be given to its policies. In this it was stated that " all its policies are non-forfeitable," and again, " it allows thirty days grace in payment of premiums." This pamphlet was shown to have accompanied the original policy, and to have been read and examined by Fowler's father previous to the time when the money was received and the tender was made.

*Held*, that as the father was induced by the act and conduct of the defendant to act as he did, it would be a fraud upon him, as well as upon the assured, to permit the company to avail itself of the omission to make the payment as a reason for the forfeiture of the policy.

Appeal from a judgment in favor of the plaintiff, entered on the verdict of a jury.

*William H. Arnoux*, for the appellant.

*D. Noble Rowan*, for the respondent.

Daniels, J.:

The judgment was recovered for the amount, with interest, of a policy of life insurance issued by the defendant, on the life of Lindley H. Fowler, on the 12th of September, 1872. A preceding

policy had been issued upon the life of the same person by the defendant, on the 6th of March, 1869, for the sum of $10,000. This policy contained the agreement that if, after having received three or more annual premiums, the assured should fail to make payment of any further premium when due, then and in that case, upon a surrender of this policy within thirty days after such unpaid premium shall be due, the company would in exchange therefor issue a paid-up policy for the proportion of the amount of insurance paid for. It was also agreed that the premium upon the policy should be paid, on or before the sixth day of March, in every year during its continuance, or within thirty days after the several payments should become due and payable. And in case of a failure to pay the premium on or before the time mentioned for its payment, then the company should not be liable for the payment of the sum insured, or any part thereof, but the policy should cease and determine and all previous payments should be forfeited to the company.

Under the clause in the policy permitting that to be done, the assured elected to take the policy upon which this action was brought, which was a paid-up policy in the sum of $1,500, subject, however, to the payment annually of the sum of thirty dollars and eighteen cents for interest on premium notes, amounting to $431.24 given in part payment of the premium of the original policy. This interest was payable in advance, and after the second policy was issued, the assured went to the State of Wisconsin to reside. He remitted to his father, who resided in the city of New York, the money required to pay the interest accruing and becoming due under the policy for this year, 1873. The letter containing the remittance was received at the residence of his father on the 12th of September, 1873. But he himself did not receive it until the latter part of the day, and presuming that the money could be lawfully paid to the company the next day, he, for the first time on that day, repaired to its office, and tendered the amount which the company refused to receive, and by way of excuse for its refusal, it was insisted that the policy had lapsed and terminated on the preceding day. This position was taken under the third article contained in the policy declaring that the interest mentioned in it should be paid, on or before the days therein mentioned, at the office of the company, or

to its duly authorized agent, " and any default thereof, or failure to pay at maturity any note given for interest, or other obligation, on this policy shall then and thereafter cause this said policy to be void without notice to any party or parties interested therein." And there is no reason for doubt but that, under this clause, without any legal qualification of it, the policy would be avoided in the election of the company, by reason of such a default. (*Matter of Attorney General* v. *Continental Life Ins. Co.*, 93 N. Y., 70.)

But to avoid the effect of the omission to pay, declared by the sixth clause in the policy, proof was given that the company in 1868 had prepared and printed for use, and afterwards distributed in the course of its business, a pamphlet explanatory of the advantages offered by it, and the effect which should be expected to be given to its policies. In mentioning the reasons why persons contemplating insurance upon their lives should insure in this company, it was stated in the pamphlet that " all its policies are non-forfeitable," and again, " it allows thirty days grace in payment of premiums." And this pamphlet was stated to have accompanied the policy in the possession of the assured, and it had been read and examined by his father previous to the time when the money was received, and this tender was made for the interest maturing upon the note. It is true that the interest was not, in a strict legal sense, a premium upon the second policy, but persons receiving policies and transacting business with the company, knowing the contents of the pamphlet upon this subject, would neither presume nor act upon this distinction. They would assume ordinarily, on the contrary, that whatever was to be paid to the company to preserve and continue the policy would be a premium, and, therefore, within this statement, contained in the pamphlet, that thirty days grace would be allowed after its maturity for its payment. And that conviction would not be displaced or overcome, by the mere notice upon the policy itself, stating that the interest was payable annually in advance on the day written therein, without grace. That notice certainly does not seem to have been observed, or to have come to the knowledge of the father of the assured, when he received the money to pay the interest, or when he tendered it at the office of the company to one of its officers; but he was acting up to that time as the agent of the assured upon the belief created by the state-

ment contained in the pamphlet, that the thirty days grace would include this as well as the preceding policy. In this manner he was misled by the act and conduct of the company itself, and it would be a fraud upon him, as well as the assured, to permit the company to avail itself of the omission to make the payment on the twelfth of September, as a reason for the forfeiture of the policy. Good faith and fair dealing, on the contrary, both demand that it should not disappoint the expectation and conviction produced by its own statement in the mind of the father of this assured. This conduct induced him to act as he did, and it was calculated to have that effect upon persons who were not familiar with the application of strict legal principles. For they would ordinarily assume this statement to give them the thirty days liberty to make the payment after the time when it actually became due. And where the statement or conduct of a party may be such as to mislead another in this manner, the law will not permit that party afterwards to take advantage of it to the prejudice of the rights of the other. (*Blair* v. *Wait,* 69 N. Y., 113.) And that the party could act upon the assurance made in this manner by the pamphlet is sustained by the authorities referred to in *Ruse* v. *Mutual Insurance Company* (24 N. Y., 653).

A point not entirely dissimilar to this arose in *Howell* v. *Knickerbocker Life Insurance Company* (44 N. Y., 276), where it was held that the assured could rely upon an agreement made by the company, that a reasonable time could be taken for the payment of the premium after it had in point of fact matured. (Id., 285.)

A dispute did exist in the evidence, given on behalf of the plaintiff and the evidence of the defendant, as to what was said and done, and the conversation which took place concerning the pamphlet, and the statement contained in it, at the time when payment of this interest was offered at the office of the company; but as the defendant did not desire to submit that dispute to the decision of the jury, but presented the case as one depending wholly upon legal principles, to be decided by the court, the judge presiding at the trial had the right to draw all such inferences from the evidence as could be legally supported by it, and to dispose of the controversy upon the effect of such inferences. (*O'Neill* v. *James,* 43 N. Y., 85; *Stratford* v. *Jones,* 97 id., 586.) And it is to be presumed

now that the court, in directing the verdict for the plaintiff, deemed the facts to be established as the evidence on her part tended to prove them to be.

After the refusal of the company to accept the interest payable on the 12th of September, 1873, it was annually offered, as it accrued, at the office of the company, in each year, prior to that day of the month, until the decease of the assured. That was sufficient to comply with the obligation of the assured, or of the plaintiff, as his assignee, and with the other evidence in the case entitled her to recover the verdict which was directed in her favor.

The judgment should, therefore, be affirmed.

BRADY, P. J., concurred.

Judgment affirmed.